# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Duane Jensen,<br><br>      Plaintiff<br><br>v.<br><br>Las Vegas Metropolitan Police Department,<br><br>et. al.,<br><br>      Defendants | Case No.: 2:17-cv-01219-JAD-VCF<br><br>**Order Granting in Part Defendants'<br>Motion for Summary Judgment and<br>Denying Plaintiff's Countermotion for<br>Sanctions**<br><br>[ECF Nos. 13, 16] |

      Plaintiff Duane Jensen, a corrections officer for the Las Vegas Metropolitan Police Department (Metro), sues Metro, Assistant Sheriff Todd R. Fasulo, and Manager of Labor Relations Lisa Lichtenberger, for violating his Fourteenth Amendment due-process and equal-protection rights when Metro suspended him for 32 hours after he impermissibly accessed information in OnBase, Metro's criminal-information database.[1] The defendants move for summary judgment on all claims, and Jensen countermoves for sanctions.[2] I deny Jensen's countermotion for sanctions, grant summary judgment on all claims except the substantive-due-process claim against Metro, and send he remaining parties to a mandatory settlement conference.

## Background

      Jensen works for Metro as a corrections officer at the Clark County Detention Center (CCDC).[3] In 2011, he was found guilty of unlawfully disposing a motor-vehicle battery, tire, or motor oil.[4] Jensen appealed this conviction numerous times, but it was ultimately upheld.[5]

---

[1] ECF No. 1.

[2] ECF Nos. 15, 16.

[3] ECF No. 13-1 at 5.

[4] ECF No. 13-6 at 2.

[5] ECF No. 13-1 at 11.

Metro initiated disciplinary proceedings against Jensen, finding that he engaged in criminal acts that violated Civil Service Rule 510.2.[6]  And because Jensen failed to promptly notify his supervisor of his citation or conviction, Metro found that he also violated Metro policy.[7]  Jensen received a 40-hour suspension for his misconduct.  In response, Jensen filed a civil suit against Metro and two of his supervisors for violating his First Amendment rights.[8]  That case went to trial in March 2018, and the jury returned verdicts for the defendants.[9]

In 2016, Jensen was working at CCDC when he received a call from Officer Egley.  Egley told Jensen that he knew the facts and circumstances about how a Sergeant was arrested and that this information was accessible through OnBase.[10]  Egley told Jensen how to access OnBase and directed him to the right page.[11]  Egley was not within Jensen's chain of command and did not order Jensen to access OnBase.[12]  Jensen admits that there was no law-enforcement purpose for accessing the documents.[13]

About a month later, an internal complaint was filed against Jensen for violating LVMPD Procedure 5/105.21, "Accessing/Disseminating Information."[14]  That regulation, which was added to Metro's employee manual in August 2013, prohibits accessing OnBase for reasons not related to official department purposes.[15]  Violating this policy warrants "a minor suspension"

---

[6] ECF No. 13-6 at 2.

[7] *Id.*

[8] *Jensen v. Metro*, Case No. 2:14-cv-00029-RFB-VCF (D. Nev.).

[9] *See* ECF No. 28 at 9–17.

[10] ECF No. 13-1 at 6.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] ECF No. 13-6 at 4.

[15] ECF No. 13-3 at 2; ECF No. 19 at 15.

ranging from 8 to 32 hours.[16]  To reach a final recommendation for the number of suspension hours Jensen should receive, Jensen's supervisor Sergeant Daniel Wallace analyzed various factors, including previous discipline.  Among other aggravating factors, Wallace determined that Jensen's previous 40-hour suspension warranted the maximum 32-hour suspension for this violation.[17]

Jensen is subject to Metro's collective-bargaining agreement, which outlines the administrative procedure to dispute disciplinary suspensions.[18]  Jensen filed a grievance under that procedure and was afforded a meeting with a reviewer to discuss whether his 32-hour suspension was appropriate.  The reviewer upheld the suspension.[19]  Instead of following the appeals process established by the collective bargaining agreement, Jensen filed this lawsuit under 42 U.S.C. § 1983.

Jensen alleges that the defendants violated his due-process and equal-protection rights because they failed to train him on how to use OnBase, used his prior 40-hour suspension to increase his discipline although that 40-hour suspension was improper, and disciplined him more harshly than other officers who also violated the policy.  The defendants move for summary judgment, contending that none of these claims amount to a due-process violation.  Fasulo and Lichtenberger also move for summary judgment because there is no evidence to show that they were personally involved in Jensen's discipline.  They also raise a qualified-immunity defense.

**Discussion**

Summary judgment is appropriate when the pleadings and admissible evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  When considering summary judgment, the court views all facts and draws all

---

[16] ECF No. 13-4 at 20, 18.

[17] ECF No. 13-6 at 5.

[18] ECF No. 13-5 at 22–27.

[19] ECF No. 13-1 at 11.

[20] Fed. R. Civ. P. 56(a).

inferences in the light most favorable to the nonmoving party.[21] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[22]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[23] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[24]

## A.     Failure-to-train claim

A municipality can be held liable under § 1983 for constitutional violations resulting from its failure to train municipal employees under certain circumstances.[25] But courts have only recognized that potential in cases where a municipality's failure to train "amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."[26] Jensen does not bring a failure-to-train claim based on deliberate indifference. His claim is "analogous to a fairly typical state-law tort claim": the city breached its duty of care to Jensen by failing to train him on policies that prohibit sanctionable actions.[27] In Nevada, a failure-to-train

---

[21] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[22] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[24] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson,* 477 U.S. at 248–49.

[25] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989).

[26] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Harris*, 489 U.S. at 388).

[27] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 128 (1992). Jensen appears to acknowledge that this claim should have been brought as a negligence claim under state law. *See* ECF No. 15 at 7 ("[Metro] ha[s] a duty and obligation to provide proper training for programs that [p]laintiff and other officers have access to. Plaintiff is not required to file two separate actions to address this claim. This was a breach of duty on the part of the [d]efendants, and [d]efendant should be held accountable for this issue.").

4

claim like this is recognized as a negligence claim.[28]  The United States Supreme Court has repeatedly rejected claims "that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law."[29]  "The reasoning in [those] cases applies with special force to claims asserted against public employers because state law, rather than the Federal Constitution, generally governs the substance of the employment relationship."[30]

Even if I were to construe this claim as one for negligence under state law, the defendants are entitled to discretionary immunity.  Under Nevada Revised Statutes § 41.032(2), no action may be brought against an officer or employee of Nevada "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved is abused."  The Nevada Supreme Court has adopted the Supreme Court's *Berkovitz-Gaubert*[31] test to determine whether a state official's actions are protected by discretionary immunity.[32]  To qualify, a state official's action must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy.[33]  "[I]f the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped, immunity will likely attach under the second

---

[28] *See Wood v. Safeway, Inc.*, 121, P.3d 1026, 1037 (Nev. 2005).

[29] *Id.* (citations omitted).

[30] *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 350 (1976); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577–78 (1972)).

[31] *See Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991).

[32] *Martinez v. Maruszczak*, 168 P.3d 720, 728–29 (Nev. 2007); Nev. Rev. Stat. § 41.032(2).

[33] *Id.* at 729.

criterion."[34]  The court need not determine that a state actor "made a conscious decision regarding policy considerations";[35] the inquiry instead focuses "on the nature of the actions taken and on whether they are susceptible to policy analysis."[36]

Nevada looks to federal law interpreting the Federal Tort Claims Act for guidance on what type of conduct discretionary immunity protects.[37]  The Ninth Circuit and this district court routinely hold that "decisions relating to the hiring, training, and supervision of employees usually invoke policy judgments of the type Congress intended the discretionary function to shield."[38]  Metro's decisions regarding how to allocate training time on internal computer programs is precisely that type of policy judgment.  So, Jensen's failure-to-train claim, whether construed as a due-process claim or a state-law negligence claim, fails as a matter of law.  I therefore grant the defendants' motion for summary judgment on this claim.

## B.    Equal-protection claim

Jensen alleges that he was punished more harshly than other officers who violated the same policy and that this disparate treatment violates his Fourteenth Amendment equal-protection rights.  The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law.[39]  To show an equal-protection violation, a plaintiff must show that defendants acted with the intent and purpose to discriminate against him based on his membership in a protected class, or that defendants

---

[34] *Id.* (internal citations and quotations omitted).

[35] *Id.* at 728.

[36] *Id.*

[37] *Id.*

[38] *See, e.g.*, *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citing cases); *Gordon v. Las Vegas Metro. Police Dep't.*, 2015 WL 5344549, at *9 (D. Nev. Sept. 14, 2015); *Neal-Lomax v. Las Vegas Metro. Police Dep't.*, 574 F. Supp. 2d 1170, 1182 (D. Nev. 2008).

[39] *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment.[40]

Jensen does not allege or provide evidence to show that he is a member of a protected class. So, his equal-protection claim must be analyzed under the "class-of-one" theory and show that the defendants treated him differently than similarly situated individuals without a rational reason. In *Engquist v. Oregon Department of Agriculture*, the Ninth Circuit expressly rejected the application of the class-of-one theory to public-employment decisions.[41] The panel reasoned that the "paradigmatic class-of-one case should be one in which a public official, for some improper motive, 'comes down hard on a hapless private citizen.'"[42] "In contrast, when a public employee is subject to unequal treatment at work for arbitrary reasons, the need for federal judicial review under equal protection is especially thin given the number of other legal protections that public employees enjoy."[43]

Jensen does not dispute that *Engquist* legally bars his claim. Instead, he argues that "he should have the right to argue the merits of his case in this matter, rather than shortcut his right to a trial on the facts."[44] But regardless of the evidence that could come out at trial about his suspension, Jensen's equal-protection claim simply doesn't have a legal basis. So, I grant summary-judgment in the defendants' favor on Jensen's equal-protection claim.

## C.    Due-process claim

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights

---

[40] *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001); *see also Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[41] *Engquist v. Oregon Dep't. of Agric.*, 478 F.3d at 985, 996 (2007) ("[W]e hold that the class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees.").

[42] *Id.* at 995 (quoting *Lauth v. McCollum*, 424 F.3d 631, 633–34 (7th Cir. 2005)).

[43] *Id.* (internal quotations and citations omitted).

[44] ECF No. 16 at 7.

implicit in the concept of ordered liberty."[45]  "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."[46]  "Property interests are not created by the Constitution, but rather 'by existing rules or understandings that stem from an independent source such as state law.'"[47]  If a property interest is established, "only official conduct that 'shocks the conscience' is cognizable as a due process violation."[48]

Jensen contends that he has a protected property interest in his salary and employment. The defendants contend that only a right to choose one's profession—not a right to a position uninterrupted by suspensions—is a protected interest.[49]  But the Ninth Circuit has repeatedly recognized that a public employee's job as a tenured (i.e., not at-will) civil servant is property protected by the Due Process Clause.[50]  "Temporary suspensions, like terminations, are deprivations of employment that can implicate the protections of due process."[51]  The defendants acknowledge that Jensen is not an at-will employee.  They failed to show that Nevada law doesn't protect Jensen's position in some manner that gives rise to a protected property interest. And the defendants don't address whether the official conduct in this case was so egregious that it shocks the conscience.  So, I deny the defendants' motion for summary judgment on Jensen's substantive-due-process claim.

[45] *Squaw Valley Dev. Co. v. Goldberg*, 365 F.3d 936, 948 (9th Cir. 2004) (internal quotation marks omitted).

[46] *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

[47] *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

[48] *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[49] ECF No. 13 at 11–12.

[50] *See Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998); *Ass'n. for Los Angeles Deputy Sheriffs v. Cty. of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

[51] *Ass'n. for Los Angeles Deputy Sheriffs*, 648 F.3d at 991 (citing *FDIC v. Mallen*, 486 U.S. 230, 240 (1988); *Finkelstein v. Bergna*, 924 F.2d 1449, 1451 (9th Cir. 1991)).

## D.    Personal participation by individual-capacity defendants

Liability under § 1983 arises only upon personal participation by the defendant.[52]  "A person deprives another of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation [of] which [the plaintiff complains]."[53]

Fasulo and Lichtenberger contend that they are entitled to summary judgment because they were not personally involved in Jensen's discipline.  Jensen's supervisor Sergeant Wallace decided that Jensen's actions warranted a 32-hour suspension.[54]  Various other supervisors signed Jensen's discipline notice, but none of them were Fasulo or Lichtenberger.[55]  Jensen presents no evidence to show that Fasulo and Lichtenberger were involved in his discipline.  Rather, he contends that "he should have the opportunity to demonstrate their participation" and that "the evidence will show that [Fasulo and Lichtenberger] discussed the discipline and determined what they felt was appropriate."[56]

But Jensen attaches no such evidence to his response.  Instead, he contends that "further information can and will be provided in the discovery process" to prove his claims.[57]  But the discovery phase of this case closed long ago.[58]  Jensen has run out of opportunities to collect evidence to prove his claims, and he gives me no reason to reopen discovery at this stage.  So, I grant summary judgment in Fasulo's and Lichtenberger's favor on all of the claims against them.[59]

---

[52] *Fayle v. Stapley*, 607 F.3d 858, 862 (9th Cir. 1979).

[53] *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citation omitted).

[54] *See* ECF No. 13-6 at 4.

[55] *See id.*

[56] ECF No. 15 at 8.

[57] *Id.*

[58] *See* ECF No. 8.

[59] In Jensen's response to the defendants' motion for summary judgment, he includes some statements that implicate a First Amendment retaliation challenge to his discipline.  But Jensen

**D.      Countermotion for sanctions**

Jensen countermoves for sanctions against the defendants on the basis that they lied about the existence of the "accessing/disseminating information" policy at the time he was disciplined. The defendants respond with proof that the policy existed since August 2013 and argue that Jensen's sanctions motion was improperly filed.[60]

Federal Rule of Civil Procedure 11 governs motions for sanctions in this court. A motion for sanctions "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)," and must be served on the opposing party under Rule 5.[61] Jensen's motion for sanctions is procedurally improper. He filed it as part of his response to the defendants' summary-judgment motion and failed to serve it on the defendants. So, I could deny it for failure to comply with the pre-filing requirements of such a motion.

But even if Jensen's motion were procedurally proper, its basis is demonstrably false. To prove that the defendants lied, Jensen attached pages 229 and 231 of an unauthenticated, outdated version of Metro's policy manual, and he contends that because those pages jump from policy number 5/105.20 to 5/105.22, number 5/105.21 (the OnBase policy) doesn't exist.[62] He doesn't explain why he failed to attach page 230, where 5/105.21 would reasonably be expected to be found. The defendants respond with authenticated evidence showing that the policy did, in fact, exist at the time Jensen was disciplined. So, I deny Jensen's countermotion for sanctions on its merits.

---

cannot raise a new theory of liability in opposition to summary judgment. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). So, I do not consider that untimely theory.

[60] *See* ECF No. 19 at 10–11, 15.

[61] Fed. R. Civ. P. 11(c)(2).

[62] *See* ECF No. 16 at 10–11.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendants' motion for summary judgment **[ECF No. 13] is GRANTED in part and DENIED in part:**

- **Summary judgment is GRANTED on** plaintiff's claims for failure to train and equal protection, and on his claims against Fasulo and Lichtenberger;
- **It is DENIED** on plaintiff's substantive-due-process claim against Metro and proceeds to trial only on this due-process claim against Metro.

IT IS FURTHER ORDERED that Jensen's countermotion for sanctions **[ECF No. 16] is DENIED.**

IT IS FURTHER ORDERED that **this matter is referred to the magistrate judge to schedule a mandatory settlement conference** with the remaining parties.

Dated: August 26, 2018

_____

U.S. District Judge Jennifer A. Dorsey